**DUNHILL SECURITIES CORPORA-TION, Plaintiff,**

v.

**MICROTHERMAL APPLICATIONS, INC., Defendant.**

**No. 69 Civ. 2058.**

United States District Court
S. D. New York.

Nov. 5, 1969.

---

3. Brief in Support of Plaintiff's Complaint, page 4.

Harvey A. Eysman, New York City, for plaintiff.

Finley, Kumble, Underberg, Persky & Roth, New York City, for defendant.

## MEMORANDUM

LASKER, District Judge.

The defendant moves, pursuant to Rules 12(b) (6) and 56(b) of the Federal Rules of Civil Procedure, for summary judgment in a contract action. Jurisdiction is based on diversity of citizenship.

The controversy centers on a letter executed by the parties on September 13, 1968. This document sets forth a preliminary understanding between the parties in regard to a proposed public offering of common stock of defendant, the plaintiff to act as principal underwriter. Such a paper is commonly referred to as a "letter of intent," and is customarily employed to reduce to writing a preliminary understanding between underwriters and proposed issuers. The letter of intent in issue set forth a preliminary understanding regarding a future sale to the public of 200,000 shares of Class A common stock of defendant corporation at an agreed price of $4.00 per share on an all or none best efforts basis. Between September 13, 1968 and December 17, 1968, the two parties undertook various actions in furtherance of the proposed financing referred to in the September 13th letter of intent. On December 17, 1968, the attorney for the defendant wrote the plaintiff as follows:

"Subsequent to the execution, on September 13, 1968 of a letter of understanding between yourself and our client, Microthermal Applications, Inc., our client became aware of three proceedings brought against you by the U. S. Securities and Exchange Commission in connection with: (1) the sale of the shares of stock of North American Research & Development Corporation in violation of the registration and antifraud provisions of the Federal Securities Laws; (2) the sale of the stock of Lynbar Mining Corporation, Ltd. without registration and in violation of the antifraud provisions of the Federal Securities Laws; and (3) your failure to maintain sufficient capital and to keep your book and records current.

"In view of your failure to reveal the existence of a preliminary finding of Judge Mansfield in the U. S. District Court for the Southern District of New York of violations in connection with the sale of the North American Research & Development Corporation and an order issued in connection with

the net capital and record keeping violations and the proceeding in connection with the Lynbar Securities and the nature of these proceedings to our client prior to the execution of the aforesaid letter of understanding and your subsequent failure to make full disclosure in connection with the preparation of Amendment No. 1 to the registration statement in which you were named as underwriter and in view of the fact that the aforesaid letter of understanding, by its language, explicitly negates any implication of a binding agreement, we hereby inform you that our client is terminating any understanding relating to your acting as its underwriter."

The complaint presses two theories: breach of contract and quantum meruit. First, plaintiff contends that the letter of intent either constituted a binding agreement upon its execution or was transformed into one by subsequent action of the parties. Second, in the alternative, plaintiff seeks recovery, in quantum meruit, for services actually performed and expenses sustained pursuant to the letter of intent.

The plaintiff's position cannot be sustained on either theory. Paragraph 11 of the letter of intent states in the clearest possible terms that the parties did not intend any liabilities to emanate from the letter. It reads as follows:

"11. Since this instrument consists only of an expression of our mutual intent, it is expressly understood that no liability or obligation of any nature whatsoever is intended to be created as between any of the parties hereto. This letter is not intended to constitute a binding agreement to consummate the financing outlined herein, nor an agreement to enter into an Underwriting Agreement. The parties propose to proceed promptly and in good faith to conclude the arrangements with respect to the proposed public offering and any legal obliga-

tions between the parties shall be only those set forth in the executed Underwriting Agreement. In the event that the Underwriting Agreement is not executed and/or the purchase of the securities is not consummated, we shall not be obligated for any expenses of the Company or for any charges or claims whatsoever arising out of this letter of intent or the proposed financing or otherwise and, similarly, the Company shall not be, in any way, obligated to us." *

In passing, it may be noted that the letter of intent from which the quotation immediately above derives was drafted by the plaintiff, and if any ambiguity arises—although none does—it is to be construed against the plaintiff.

Professor Williston, in Section 21 of his treatise,[1] states:

"It is indeed true that if the parties to an agreement undertake that no legal obligation shall be created, their undertaking in this regard will be respected by the law, as would any other term of their agreement, provided neither the agreement nor the stipulation itself is illegal."

■ There being no ambiguity as to the meaning of the present parties, the court is not called upon to ascertain their intent from sources external to the written document. It is clear that the parties intended not to be bound unless an Underwriting Agreement were executed, and that if it were, the Underwriting Agreement would constitute the sole source of legal obligations between them. Tradeways Incorporated v. Chrysler Corporation, 342 F.2d 350 (2d Cir.1965); Smith v. Onyx Oil & Chemical Co., 218 F.2d 104, 50 A.L.R.2d 216 (3d Cir.1955). The court in Merritt-Chapman & Scott Corp. v. Public Utility District No. 2, 237 F.Supp. 985, 991 (S. D.N.Y.1965), stated:

"The more recent New York cases * * * make it plain that if either of the parties manifests its intent not

---

* The words "we" and "us" refer to plaintiff; "the Company" to defendant.

1. Williston on Contracts, 3d Ed., 1957.

to be bound until a written contract is executed, then the parties are not bound until that event occurs." (Citations omitted.)

Since the Underwriting Agreement was never executed, the parties were never bound in any way.

■ It is no doubt true that, even where a formal writing is contemplated by the parties, a binding contract may nevertheless arise before the execution of the writing. See Banking & Trading Corporation Ltd. v. Floete, 257 F.2d 765 (2d Cir. 1958). The intention of the parties is crucial. In a case in which the parties have agreed upon all material considerations and intend to become presently bound, the later writing serves merely as a formal, convenient memorial of previously agreed upon terms. Here, however, we are not faced with such a situation. A letter of intent is a customary device used within the financial community, and it is clear that the financial community does not regard such a document as a binding agreement, but rather, an expression of tentative intentions of the parties. For example, it is stated in McCarthy, Acquisitions and Mergers (1963), at 130:

> "*Object of the Letter of Intent.* The letter of intent should merely express the intention of the parties and not constitute a binding agreement. It may be very brief, or quite detailed, and usually contains escape clauses, such as 'The general basis and conditions recited are subject to the execution of a formal contract in form satisfactory to the attorneys for both parties' and 'It is understood that neither party shall be bound to the other by this letter for damages, expenses, failure to finally agree on a formal and final contract, or in any other way.'"

Again, in Guideposts for a First Public Offering, The Business Lawyer (April 1960), 539, at 553–4, it is stated that:

> "An informal expression of the basic terms of the underwriting is sometimes (but by no means always) drawn up at the outset of the proceedings in the form of a letter from the originating underwriter to the company, usually referred to as the 'letter of intent.' Although signed by representatives of both the company and underwriter, such a letter is rarely more than an agreement to agree."

■ It also follows from the language of paragraph 11 of the letter of intent that plaintiff cannot recover under the theory of quantum meruit. That paragraph states that "no liability or obligation of any nature whatsoever is intended to be created as between any of the parties hereto." The same paragraph further states that "the Company shall not be, in any way, obligated to us." This broad language necessarily precludes recovery for services rendered. Further, because of the common usage of letters of intent, the plaintiff must have known that no compensation would be forthcoming if the Underwriting Agreement was not executed. When plaintiff agreed that no obligations would arise until the execution of the Underwriting Agreement, it knew that it could be called upon to perform certain activities prior to the execution of the Agreement. These contemplated actions cannot be converted to a basis of recovery in quantum meruit, when the plaintiff expressly waived such possible compensation in the letter of intent. Similarly, plaintiff knew that it was customary and to be expected that the defendant would file a registration statement (and a copy of the unexecuted Underwriting Agreement) with the Securities and Exchange Commission. Thus, plaintiff cannot now claim that this filing caused the plaintiff to undertake compensable action in reliance upon defendant's "implied request."

■ Nor is there merit to plaintiff's contention that, by filing a copy of the unexecuted Agreement, defendant transformed the letter of intent into a binding contract. If plaintiff's position were accepted, it would produce the bizarre result that any issuer could bind

an underwriter in this manner, contrary to the intention of the parties.

Since there are no genuine issues of fact to be determined and the plaintiff's cause of action has no legal merit, defendant's motion for summary judgment is granted.

It is so ordered.