**In re ALLEGHENY INTERNATIONAL, INC., Sunbeam Corporation, Sunbeam Holdings, Inc., Almet/Lawnlite, Inc., Chemetron Corporation, Integrated Specialties, Inc., Allegheny International (USA), Inc., Al–Industrial Products, Inc., Allegheny International Exercise Co., Woodshaft, Inc., Infoswitch, Inc., and Eliskim, Inc., Debtors.**

Civ. A. No. 90–2106.
Bankruptcy No. 88–448.
Motion No. 89–4822M.

United States District Court,
W.D. Pennsylvania.

Aug. 27, 1991.

---

Robert L. Laufer, New York City, and Dennis J. O'Brien, Pittsburgh, Pa., for Wells Fargo.

Dennis Lewis, Pittsburgh, Pa., for Sunbeam Oster.

M. Bruce McCullough, Pittsburgh, Pa., for debtor.

Cynthia A. Baker, New York City, for Japonica Partners.

Douglas A. Campbell, Pittsburgh, Pa., for Unsecured Creditors of Sunbeam.

Larry Henin, New York City, for Equity Committee of AI.

Kathy Robb Singer, Pittsburgh, Pa., for trustee.

Michael G. Lederman, Pittsburgh, Pa., for unidentified.

Robert Sable, Pittsburgh, Pa., for unsecured creditors of AI.

## MEMORANDUM OPINION

BLOCH, District Judge.

### I. Introduction

Presently before this Court is the appeal of Wells Fargo Bank (Wells Fargo) from the November 20, 1990 order of the bankruptcy court. In that order, Allegheny International, Inc.'s (AI) motion for permission to pay commitment fees and expenses incurred during a due diligence investigation performed by Wells Fargo and its counsel, Paul, Weiss, Rifkind, Wharton and Garrison (Paul Weiss), was granted in part and denied in part. Payment of the commitment fee was denied in its entirety, and reimbursement of expenses was granted, but the amount approved by the Court was less than the amount requested. For the

reasons set forth below, the bankruptcy court's November 20, 1990 order is affirmed in part and remanded in part.

## II. Facts

AI and four of its subsidiaries filed petitions for reorganization under Chapter 11 of the Bankruptcy Code on February 20, 1988. Fourteen other AI subsidiaries filed for protection from creditors on May 3, 1988. By August of 1989, AI had devised and withdrawn four reorganization plans. The current appeal arises out of AI's fifth (failed) reorganization plan.

On July 21, 1989, AI entered into a commitment letter with Wells Fargo whereby Wells Fargo agreed to lend up to $400,000,-000.00 to finance AI's reorganization plan. This agreement obligated AI to pay Wells Fargo a commitment fee accruing at the rate of ½% of the loan amount per annum during the period Wells Fargo performed a due diligence examination regarding the loan. The agreement also obligated AI to reimburse Wells Fargo for its cost and expenses including attorneys fees incurred during the due diligence investigation.[1]

On July 25, 1989, AI sought approval of the terms and conditions of the commitment letter. The bankruptcy court held a hearing on the motion on August 3, 1989. Several of AI's constituencies raised objections to the terms and conditions of the commitment letter, specifically, the open-ended aspect of the commitment fee, which would accrue at approximately $165,000 a month, and Wells Fargo's due diligence

counsel fees. (Tr. at 47, 66–74 (8/3/89)). The bankruptcy court expressed concern with the unbounded nature of the commitment fee, stating, "I don't like open-ended fees on anybody's part. That is just a little bit troublesome because if, in fact, they're open-ended, then you have little reason to withdraw them." *Id.* at 149. Regarding the counsel fees to be incurred during the due diligence examination, the court stated that Wells Fargo was not being hired as a professional person and thus would not be governed by 11 U.S.C. § 328:

> All of you know that [11 U.S.C. § 328(a)] has a second sentence or maybe its really a paragraph, but notwithstanding such terms it is the only provision I know of that allows a judge to correct his mistakes at the expense of the professional I should say. But that doesn't apply and would not apply to the banks. I assume they're not being hired under that kind of provision.

*Id.* at 47–48. However, the bankruptcy court handwrote into its August 3, 1989 order approving the commitment letter that it reserved the right to examine the reasonableness of Wells Fargo's expenses related to its due diligence examination by imposing the reasonableness strictures of §§ 328(a) and 506(b) on Wells Fargo. *In re Allegheny International, Inc.*, No. 88–448 (Bankr.W.D.Pa. 8/3/89). As a result, the bankruptcy court granted AI's motion to pay commitment fees and expenses to Wells Fargo. The bankruptcy court's deci-

---

1. The specific provisions of the commitment letter are as follows:

   (1) The Borrower acknowledges its obligation to pay the fees described in the attached Summary of Indicative Terms and Conditions, including a portion of Wells Fargo's underwriting fees equal to $100,000, which shall be deemed fully earned and to be payable upon the acceptance of this commitment.

   (2) The Borrower shall pay a commitment fee to the agent for the account of the banks in proportion to their commitments for the Term Facility and the Revolving Facility as in effect from time to time. This fee shall be computed on actual days elapsed in a 360–day year and shall accrue at a rate of ½% per annum: (i) on the total amount of the Bank Financing from the date of acceptance of this commitment letter to the Funding Date, at which time this fee is fully payable. If the Bank Financing commitments are terminated, the Commitment Fee shall be fully payable on such date of termination for the period from the date of acceptance of this commitment letter to the date of termination.

   (3) The Borrower hereby agrees to pay Wells Fargo's and the Banks' out-of-pocket costs and expenses in connection herewith, including fees, disbursements and related charges of its counsel and its consultants, regardless of whether any loan documents are agreed to and signed by the Banks and the Borrower and regardless of whether any loans are actually made. The Borrower acknowledges that its obligation to pay such fees, costs and expenses is absolute. (July 21, 1989 commitment letter).

sion was affirmed by this Court. *In re Allegheny International, Inc.,* 117 B.R. 171 (W.D.Pa.1990).

The due diligence investigation proceeded for 110 days (7/21/89 to 11/8/89), despite the fact that the bankruptcy court approved an agreement to save money and avoid duplication in which AI purchased for $250,000 materials prepared by Donaldson Lufkin and Jenrette (DLJ) during its two unsuccessful attempts to merge with AI. On November 8, 1989, Wells Fargo withdrew its commitment to lend $400,000,-000.00 to AI stating three reasons for the termination of the commitment letter. The Termination Letter provided the following:

> As you know, we have made every effort to conduct a thorough due diligence investigation quickly in order to determine whether the due diligence condition set forth in the Wells Fargo letter could be satisfied. The results of our due diligence investigation, particularly in the environmental area, have been so troubling that we must conclude that such condition cannot be satisfied. In addition, ... we have learned that AI and Sunbeam cannot comply with the provisions of the Wells Fargo letter that require that the AI reorganization be structured so that the Non–Operating Expenses would be funded solely from the proceeds of certain "baggage assets" and that Sunbeam and its assets would be insulated from the Non–Operating Expenses. Moreover, in light of the recent and reasonably anticipated future deterioration in the business prospects of the Northern Electric Company, Wells Fargo does not believe that it can become reasonably satisfied with Sunbeam's future business prospects. Finally, at the time the Wells Fargo commitment letter was entered into, both parties had an understanding as to the capital structure of the reorganized AI and the identity of those who would control the reorganized AI. It is now clear that the capital structure and the identity of the controlling equity holders of reorganized AI will differ dramatically from that understanding and that under the proposed plan, such structure and identity will not be known until substantial disputes among the claimants have been resolved. Accordingly, Wells Fargo cannot continue to commit to finance AI/Sunbeam's a [sic] plan of reorganization.

(Termination letter from Wells Fargo to AI (11/8/89)).

AI filed a motion on December 13, 1989, for court approval to pay commitment fees and expenses incurred during the due diligence investigation on December 13, 1989. AI sought permission to pay a commitment fee of $611,111.12, out-of-pocket expenses of $18,807.99, and due diligence counsel fees and disbursements of $237,396.06; an underwriting fee of $100,000, travel and out-of-pocket expenses of $11,264, and legal fees of $73,594 had previously been paid. A hearing on the motion was held on January 11, 1990, in which the bankruptcy court stated, "I don't think any description has been submitted with this fee petition describing what was done during these fees," and "[i]f Wells Fargo wants to be reimbursed, ... Wells Fargo has an obligation to make some reasonable explanation." (Tr. at 8–9 (1/11/90)). On January 17, 1990, the bankruptcy court found itself "unable to authorize these payments at this time, because the reasonableness of the request is not supported by any documentation." *In re Allegheny International, Inc.,* No. 88–448, order at 2 (Bankr.W.D.Pa. 1/17/90). Therefore, it issued an order directing Wells Fargo to: (1) report the legal services it received and for which it seeks reimbursement, in the same detail as required by the Local Rules of the Western District of Pennsylvania for recovery of attorney fees; and (2) with regard to the bank's ½% commitment fee, Wells Fargo was to report to the court what information the bank knew or had reason to believe when it first offered the commitment letter, and what information the bank learned during the examination which discouraged the commitment. *Id.* Wells Fargo had to prove that the expenses incurred were reasonable before the bankruptcy court would authorize AI to make these payments.

On February 8, 1990, Wells Fargo submitted an application for reimbursement of

fees and expenses (Post–Hearing State-ment), which the bankruptcy court deter-mined "did not provide an adequate report of what [Wells Fargo] knew when it first offered the commitment and what it learned during the due diligence process." *In re Allegheny International, Inc.*, No. 88–448, slip op. at 5 (Bankr.W.D.Pa. 11/20/90). The Post–Hearing Statement basically consisted of a list of time entries and invoices of Paul Weiss. Consequently, the bankruptcy court denied payment of Wells Fargo's commitment fee in total, but permitted AI to reimburse Wells Fargo and Paul Weiss for their out-of-pocket costs and fees, subject to the modifications set forth in the November 20, 1990 opinion. The bankruptcy court found that the hour-ly rate charged by Paul Weiss is subject to the same limitations imposed on other counsel in the bankruptcy case as discussed in the bankruptcy court's December 14, 1989 fee application opinion: $236.25 per hour for partners or the rate charged, whichever is less; $131.25 per hour for associates or the rate charged, whichever is less; and $47.25 per hour for paralegals and clerks or the rate charged, whichever is less. The bankruptcy court concluded that reimbursement of only reasonable ex-penses was justified due to the fact that the due diligence investigation took so long and Wells Fargo did not provide an ade-quate accounting of its fees and costs.

### III. Discussion

#### A. Jurisdiction

Jurisdiction over this appeal exists pursu-ant to 28 U.S.C. § 158(a). Section 158(a) provides that district courts may review appeals from final judgments, orders, and decrees of bankruptcy judges, and with leave of court, interlocutory orders and de-crees of bankruptcy judges. *In re Alleghe-ny International, Inc.*, 117 B.R. 171 (W.D.Pa.1990). Bankruptcy Rule 8001(a) provides the manner of taking an appeal from a final judgment, order, or decree of a

bankruptcy judge to a district court. The November 20, 1990 order is a final order. Therefore, this Court has jurisdiction over this appeal.

#### B. Standard of review

This Court must accept the bankruptcy court's findings of fact unless they are clearly erroneous. Bankr.R. 8013; *F/S Airlease II, Inc. v. Simon*, 844 F.2d 99, 103 (3d Cir.1988). With respect to questions of law, this Court employs a plenary scope of review. *Resyn Corp. v. U.S.*, 851 F.2d 660, 664 (3d Cir.1988); *Universal Minerals, Inc. v. C.A. Hughes and Co.*, 669 F.2d 98, 102 (3d Cir.1981).

#### C. Administrative expenses

As an initial matter, this Court must first determine whether the bankruptcy court has the power to oversee the ex-penses for which Wells Fargo seeks pay-ment. Section 503(b) of the Bankruptcy Code, 11 U.S.C. § 503(b), provides, "after notice and a hearing, there shall be allowed administrative expenses ... including ... (1)(a) the actual, necessary costs and ex-penses of preserving the estate ... [and] (2) compensation and reimbursement awarded under § 330(a) of this title...." [2] Section 330(a)(1) permits bankruptcy courts to award "reasonable compensation for ac-tual, necessary services rendered by [a] trustee, examiner, professional person, or attorney, ... based on the nature, the ex-tent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title." Section 105(a) of the Bankruptcy Code states, "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The parties agree that Wells Fargo's expenses constitute ad-ministrative expenses. Therefore, the bankruptcy court was empowered to allow recovery of these expenses to the extent

---

**2.** Title 11 U.S.C. § 102(1)(A) defines "after no-tice and a hearing" as "such notice as is appro-priate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances." The bankruptcy court held a hearing on the motion to pay Wells Fargo and Paul Weiss their expenses on January 11, 1990 and directed Wells Fargo to submit a Post–Hearing Statement. These actions satis-fied the § 102(1)(A) requirement.

the court found them to be necessary to preserve the estate. Although the court found that 11 U.S.C. § 328(a) was not applicable to Wells Fargo because Wells Fargo was not a trustee, examiner, professional person or attorney, the court properly exercised its equitable powers pursuant to 11 U.S.C. §§ 105, 503 in imposing the reasonableness test of 11 U.S.C. §§ 328(a), 506(b). The Bankruptcy Code empowers bankruptcy courts to insure that administrative expenses such as those involved in the present case are reasonable. Consequently, the bankruptcy court possesses the power to oversee administrative expenses in the form of payments by AI to Wells Fargo and Paul Weiss and to review such expenses for their reasonableness.

### D. Reasonableness of Wells Fargo's expenses

#### 1. Commitment fee

■ Wells Fargo argues that the bankruptcy court erred in denying AI's motion to pay the commitment fee to Wells Fargo because the court approved the commitment letter, upon which Wells Fargo relied. While it is true that the bankruptcy court approved the terms and conditions of the commitment letter in its August 3, 1989 order and that this Court ultimately affirmed the order, the bankruptcy court did not agree to approve whatever amount AI and Wells Fargo requested. Wells Fargo relies on isolated statements by the bankruptcy court in support of its argument. *See, e.g.,* tr. at 49 (8/3/89). Upon review of the August 3, 1989 transcript and order in their entirety, it is clear that although the bankruptcy court approved the ½% rate, the court expressed concern with the duration for which fees would be incurred. For example, at the August 3, 1989 hearing, counsel for AI stated and the court agreed, "I would draw a very bright lined distinction between the professional and the fees to the bank. The fees to the bank are much akin to having bought a chair, you own a chair." (Tr. at 48 (8/3/89)). Wells Fargo misinterpreted this testimony to mean that it was guaranteed to receive its commitment fee. This statement refers to the percent charged by the bank, but certainly not to the number of days elapsed, which was uncertain at that time. Also, the "open-ended fees" discussed by the court at the August 3, 1989 hearing, *see id.* at 149, refer to the length of time of the due diligence examination; this is the only unknown (open-ended) variable in the calculation of the fee. This Court finds that the bankruptcy court unambiguously reserved the right to examine Wells Fargo's expenses for their reasonableness in regard to the duration of the due diligence examination. Therefore, Wells Fargo knew that it was at risk of not obtaining the fee if it failed to demonstrate that the fee was reasonable.

■ The bankruptcy court has the independent authority and responsibility to determine the reasonableness of compensation. *In re Meade Land and Development Co., Inc.,* 527 F.2d 280, 283 (3d Cir.1975); *In the Matter of Affinito and Son, Inc.,* 63 B.R. 495, 497 (Bankr.W.D.Pa.1986). However, the burden of proof as to reasonableness of compensation requested from a debtors' estate is upon the person making the request. *Affinito and Son, supra.* The bankruptcy court found that Wells Fargo did not meet its burden, and this Court is not persuaded that this finding is clearly erroneous. The bankruptcy court determined that Wells Fargo failed to demonstrate that extensive due diligence (110 days) was required to determine that the electric blanket and heating pad business had an uncertain future. Further yet, the court found that Wells Fargo failed to prove that extensive due diligence was necessary to determine that AI's liabilities could be insulated from the operating entities or that an uncertain ownership structure would result from the cramdown plan of reorganization. Instead, the Court found that Wells Fargo caused delay in the reorganization effort.

Since Wells Fargo did not provide an adequate report of what it knew when it first offered the commitment and what it learned during the due diligence process, the bankruptcy court refused to authorize payment of a $611,111.12 commitment fee.

Wells Fargo had ample opportunity to conduct its due diligence investigation and report what it learned during that examination. However, Wells Fargo did not meet its burden of proving that the expenses requested were reasonable. Wells Fargo has not convinced this Court that the bankruptcy court's findings are clearly erroneous.

■ Wells Fargo next argues that an evidentiary hearing was not held to determine if the reasons for terminating the commitment were genuine. However, as stated above, *see supra* n. 2, the January 11, 1990 hearing and Wells Fargo's opportunity to submit a Post–Hearing Statement satisfied the notice and hearing requirements of § 503(b).

■ Finally, Wells Fargo argues that the bankruptcy court in its August 3, 1989 order only reserved the right to examine the reasonableness of its expenses and not the commitment fee because the fee is not an expense. This Court finds this contention to be without merit. At the August 3, 1989 hearing, the bankruptcy court discussed the open-ended aspect of the commitment fee, attorney's fees and out-of-pocket costs. The court then approved the commitment letter involving all of these expenses and reserved the right to examine the reasonableness of Wells Fargo's expenses. This Court finds that "lender's expenses," as handwritten in the August 3, 1989 order, includes the commitment fee. Also, this Court determines that the bankruptcy court's interpretation of its August 3, 1989 order is consistent with the order's plain language and the testimony at the August 3, 1989 hearing.

Wells Fargo has not proved that the commitment fee was an actual, necessary and reasonable expense or that the bankruptcy court was clearly erroneous in its decision to deny payment of the fee. Consequently, the bankruptcy court's determination regarding the commitment fee will be approved.

### 2. Attorney's fees

■ Wells Fargo argues that the bankruptcy court erred in limiting reimbursement of the legal fees incurred by Wells Fargo's counsel, Paul Weiss, to 65% of the requested amount. Specifically, Wells Fargo argues that it was clearly erroneous for the bankruptcy court to reduce the legal fees based upon the December 14, 1989 fee application opinion issued after the commitment letter was terminated. Wells Fargo asserts that the bankruptcy court knew that Paul Weiss was being retained by Wells Fargo to assist in the due diligence investigation. *See* tr. at 67 (8/3/89) ("it appears that the bank will be using the New York law firm of Paul Weiss, ... some of the fees in this court may have astounded you, wait until you see their fees, your honor"). Wells Fargo thus argues that it retained Paul Weiss in reliance upon the bankruptcy court's approval.

As discussed above, the bankruptcy court had the power to ensure that only reasonable legal expenses incurred by Wells Fargo be paid by the debtor. The court held a hearing on January 11, 1990. On January 17, 1990, the court ordered Wells Fargo to submit a Post–Hearing Statement. The court then reviewed the Post–Hearing Statement as it apprised the parties it would do on August 3, 1989.

In its opinion, the bankruptcy court's sole explanation for reducing Paul Weiss' fees is a statement that such fees are subject to the same limitations imposed on other counsel in the case pursuant to a prior opinion in the case, *In re Allegheny International, Inc.*, No. 88–448 (Bankr. W.D.Pa. 12/14/89) (Fee Opinion). In its Fee Opinion, the court analyzed fee petitions regarding debtor's counsel and counsel for the various committees involved in the bankruptcy proceeding. The court determined that a reasonable hourly rate for such counsel would equal the reasonable hourly rate for competent bankruptcy counsel in Western Pennsylvania. The court explained that competent counsel is available in Western Pennsylvania, and the committees were able to hire counsel from Pittsburgh or other cities with comparable market rates if they so chose. The court stated that the committees were free to hire counsel from expensive markets such

as New York City, but the court would generally not authorize the estate to pay the difference between the hourly rate requested by such counsel and the applicable market rate for Western Pennsylvania. *See* Fee Opinion, slip op. at 10. In its Fee Opinion, the court considered fees for one New York firm, Fulbright Jaworski & Reavis McGrath. Regarding this firm, the court allowed recovery of fees in excess of what the court determined to be the applicable Western Pennsylvania market rate of $150 per hour for high caliber bankruptcy counsel, *id.* at 5, but the court did not explain the reasons for its departure from the Western Pennsylvania rate. *Id.* at 11.

This Court finds that the bankruptcy court's reduction of Wells Fargo's legal fees is not adequately explained. The bankruptcy court was aware when it approved the commitment letter that Wells Fargo had retained Paul Weiss, a New York law firm. Although the court was empowered to review the legal fees for reasonableness, the court was required to adequately justify any reductions of the requested fees that the court imposed. Using Western Pennsylvania as the relevant market for a determination of a reasonable hourly rate was improper because the court had already tacitly approved the use of a New York law firm. This Court must remand this matter for a determination of whether the legal fees requested by Wells Fargo were reasonable. In reaching such a determination, the court should use New York City as the relevant market for calculating a reasonable market rate. Of course, Wells Fargo bears the burden of proving the reasonableness of its requested legal fees. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir.1990).

### E. Judicial estoppel

■ Finally, Wells Fargo discusses for the first time in its Reply Brief an estoppel argument. Wells Fargo argues that Sunbeam–Oster, as the successor-in-interest to AI, should not be able to assert a position in direct contradiction to that assumed by AI. Therefore, Wells Fargo argues that Sunbeam–Oster is estopped from opposing Wells Fargo's appeal. Essentially, this is a judicial estoppel argument. The equitable doctrine of judicial estoppel "precludes a party from assuming a position in a legal proceeding that contradicts or is inconsistent with a previously asserted position. Judicial estoppel focuses on the relationship between the litigant and the judicial system and seeks to preserve the integrity of the system." *DelGrosso v. Spang and Co.*, 903 F.2d 234, 241 (3d Cir.1990). A year ago, AI was acquired by Japonica Partners, L.P. and reorganized as Sunbeam–Oster, an entity separate and independent from AI. Thus, Sunbeam–Oster can oppose Wells Fargo's appeal since it was not a party to AI's failed reorganization plan with Wells Fargo. It is irrelevant that AI filed a motion for approval to pay Wells Fargo its commitment fee and expenses since AI no longer exists. This Court finds Wells Fargo's estoppel argument to be without merit.

### IV. Conclusion

This Court determines that the bankruptcy court had the power to review Wells Fargo's expenses for their reasonableness. Upon reviewing Wells Fargo's application for fees and expenses, the bankruptcy court denied payment of the commitment fee, but allowed reimbursement of counsel fees as modified. Wells Fargo did not prove to this Court that the bankruptcy court was clearly erroneous in concluding that the entire commitment fee is unreasonable. Therefore, the bankrutcy court's finding in this regard will be affirmed. Wells Fargo did prove that the bankruptcy court erred in limiting reimbursement of counsel fees. The bankruptcy court never determined what is a reasonable hourly rate for New York City counsel in this case but arbitrarily chose an amount moderately higher than the Western Pennsylvania market rate. Therefore, this Court remands this matter to the bankruptcy court for a determination of whether Wells Fargo's attorney's fees were reasonable.

An appropriate Order will be issued.

### ORDER

AND NOW, this 27th day of August, 1991, upon consideration of the Appeal of

the Bankruptcy Court's Memorandum and Order entered on November 20, 1990,

IT IS HEREBY ORDERED that the decision of the bankruptcy court is AFFIRMED in part and REVERSED and REMANDED in part, in accordance with the accompanying Memorandum Opinion.