**In the Matter of FEDERATED DEPARTMENT STORES, INC. and Allied Stores Corporation, et al., Debtors.**

**Bankruptcy No. 1–90–00130.**

United States Bankruptcy Court, S.D. Ohio, W.D.

May 22, 1990.

David G. Heiman, Jones Day Reavis & Pogue, Cleveland, Ohio, for debtors.

Paul H. Spaeth, Charles Caldwell, Office of the U.S. Trustee for the Ninth Region, Conrad J. Morgenstern, Columbus, Ohio, Neal J. Weill, Office of U.S. Trustee, Cincinnati, Ohio, for U.S. Trustee.

Lewis S. Rosenbloom, Winston & Strawn, Chicago, Ill., for Official Committee of Unsecured Creditors—Federated.

Lawrence M. Handelsman, Strook Strook & Levan, New York City, for Official Committee of Federated Bondholders.

## DECISION AND ORDER

J. VINCENT AUG, Jr., Bankruptcy Judge.

This matter is before the Court on the application of the Debtors in Possession ("Debtors") to employ Shearson Lehman Hutton, Inc. as financial advisors ("Shearson"). The United States Trustee, the Official Committee of Unsecured Creditors of the Federated Debtors and the Official Committee of Federated Bondholders' objected to the Shearson application. The Court has reviewed all the relevant documents. The Court has jurisdiction of this matter pursuant to the General Order of Reference entered in this District. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

The United States Trustee objects to the Shearson application, contending that Shearson should be disqualified from representing Debtors by virtue of the following connections: (1) Shearson has served as an investment banker for outstanding securities of Debtors; (2) Shearson is an equity security holder and creditor of Debtors; (3) Shearson provided a fairness opinion to Debtors in connection with the leveraged acquisition; and (4) the retention of Shearson would cause the public to perceive an appearance of impropriety that should not be tolerated. The United States Trustee further argues that if Shearson is retained by Debtors, it should not be retained retroactively as of the time it commenced working for Debtors. Finally, the United States Trustee argues that Shearson, if retained, should be subject to the same compensation procedures as other professionals and should not be compensated for duplicative services.

The Official Committee of Unsecured Creditors of the Federated Debtors objects to the Shearson application only to the extent that it is concerned with the possible duplication of services and asks that Shearson share its work product with the Official Committees appointed in these cases.

The Official Committee of Federated Bondholders' objects to the Shearson application only to the extent that the application contemplates an open-ended term of employment. The Committee requests that Shearson be retained for a period of one year subject to Shearson's employment being extended for cause.

On April 12, 1990, the Court held a hearing on the Shearson application and reserved decision. Based on the hearing, the various affidavits and legal memoranda submitted on this matter, the Court finds that Shearson should be permitted to advise the Debtors and that its retention will be granted retroactively as of February 5, 1990. We make this decision for the reasons stated herein which will constitute the Court's findings of fact, opinion and conclusions of law.

A prime consideration which this Court must take into account is the public interest in a prompt and successful reorganization of the Debtors. The Court must not lose sight of the overall goal of a Chapter 11 proceeding. "The purpose of a business reorganization case, unlike a liquidation case, is to restructure its finances so that it may continue to operate, provide its employees with jobs, pay its creditors, and produce a return for its stockholders." H.Rep. No. 595, 95th Cong., 1st Sess., 220–261 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6179. The United States Trustee persuasively argues that public perception is relevant to this Court's determination. While public perception is important, there are many people whose lives are affected by this reorganization. The repercussions to the retail industry would be significant if Federated's Chapter 11 proceeding languishes in this Court. In addition, the orderly administration of this Chapter 11 proceeding and the expeditious approval of a plan of reorganization are public interests strongly militating in favor of Shearson's retention. We believe Shearson's retention will facilitate the formulation of an effective and timely plan of reorganization. If these proceedings are needlessly protracted there could be increased instability in the retail market. The harm to the public from such protraction greatly outweighs any public perception of impropriety.

### I. Is Shearson Disinterested?

#### 1. Investment Banker

■ Shearson was an underwriter for securities issued by certain Debtors prior to the leveraged acquisition by Campeau Corporation. Those securities were issued during a different era in Debtors' corporate existence, and Shearson's connection with them has long since passed. As a result of the leveraged acquisitions, there has been a fundamental change in the very nature of Debtors. To a considerable extent they are different corporations from those with which Shearson had connections. In weighing the gravity of any potential conflict of interest by virtue of Shearson's prior underwriting, versus the significant costs that the estate and the public would have to bear if the Shearson application were denied, the Court holds that Shearson's prior underwriting of securities of Debtors does not disqualify it from being a disinterested person pursuant to 11 U.S.C. § 327(a).

■ As a general rule, the debtor in possession may select its own professional people without interference. *See, e.g., In re Microwave Products of America, Inc.,* 94 B.R. 971, 972 (Bankr.W.D.Tenn.1989). However, under 11 U.S.C. § 327(a), any professional persons employed by the trustee must be a "disinterested person" who does not possess any "interest adverse to the estate." That provision is made applicable to a debtor in possession by operation of 11 U.S.C. § 1107(a). 11 U.S.C. § 101(13)(B) and (C) elaborate that "disinterested person" means a person who "is not and was not an investment banker for any outstanding security of the debtor;" and "has not been, within three years before the date of the filing of the petition, an investment banker for a security of the debtor, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the debtor".

■ This Court cannot operate in a vacuum when determining whether Shearson is a disinterested person. Courts must apply common sense when interpreting statutes. *In re PHM Credit Corp.,* 110 B.R. 284, 288 (E.D.Mi.1990). ("Statutes should be interpreted to avoid unreasonable results whenever possible.") *Id.* at 288, citing, *American Tobacco Co. v. Patterson,* 456 U.S. 63, 71, 102 S.Ct. 1534, 1538, 71 L.Ed.2d 748 (1981). The court in *PHM Credit* construed disinterested person using the following equitable analysis:

> Essential to any analysis of the meaning of and policy behind any section of the bankruptcy code is the recognition that a bankruptcy court is a court of equity. Bankruptcy courts do not read statutory words with a computer's ease, but operate under the overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction.

*Id.* at 288–89, quoting, *In re Briggs Transportation Co.,* 780 F.2d 1339, 1343 (8th Cir.1985); *See also, In re Martin,* 817 F.2d 175, 181 (1st Cir.1987). The purpose behind the disinterested person requirement is to identify persons who exhibit a risk of acting in a manner calculated to maximize their own interests at the expense of the best interests of the estate. *See, In re O'Connor,* 52 B.R. 892, 899 (Bankr.W.D. Okla.1985).

While some courts do interpret § 327(a) literally, the better analysis is to balance the risk and gravity of the potential conflict of interest with the costs that the estate and perhaps the public would incur in the event of disqualification of the professional. Some of these costs include the additional expense and delay in getting a substitute professional up to speed and the loss of the original professional's superior expertise that the substitute professional cannot replace. *In re Martin,* 817 F.2d 175, 182 (1st Cir.1987). ("This inquiry is of necessity case-specific ... Armed with knowledge of all of the relevant facts, the bankruptcy court must determine, case by case, whether the [alleged conflict] can be tolerated under the particular circumstances. In so doing, the court should consider the full panoply of events and elements...."). *Id.* at 182; *In re Heatron, Inc.,* 5 B.R. 703, 704–05 (Bankr.W.D.Mo. 1980); *In re Best Western Heritage Inn Partnership,* 79 B.R. 736 (Bankr.E.D.Tenn.

1987); *In re Guy Apple Masonry Contractor, Inc.*, 45 B.R. 160, 167 (Bankr.D.Ariz. 1984); *In re O.P.M. Leasing Services, Inc.*, 16 B.R. 932, 938 (Bankr.S.D.N.Y.1982).

It is important to recognize what is at stake here. No one has doubted Debtors' compelling need for a qualified financial advisor. Nor has anyone questioned Shearson's qualifications to fill such a position. The Debtors are extremely large and complex enterprises. They require a financial advisor experienced in reorganizations of a similar magnitude and complexity.[1] The Debtors submitted competent evidence that Shearson and most, if not all, of the major investment banking firms have underwritten various outstanding securities of the Debtors. If Shearson is not a disinterested person by virtue of its underwriting various outstanding securities of the Debtors, then most of the major investment banking firms which are capable of representing the Debtors would be similarly foreclosed from such representation.

Debtors are charged with the responsibility of proposing a plan of reorganization. They have indicated a desire and ability to do so quickly. Accordingly, Debtors' financial advisor must quickly gain an understanding of the financial and capital structure issues confronting the Debtors, develop strategies to address those issues and implement those strategies. It would take considerable time and expense for a new financial advisor to become conversant with the enormous complexity of the Debtors.

■ Even if one were to take the position that Shearson is not a disinterested person, § 1107(b) would still allow its representation. Pursuant to 11 U.S.C. § 1107(b), the debtor in possession is given more latitude than a trustee in hiring professional persons. Collier on Bankruptcy explains the purpose of this provision: ("[b]ut for this exception, § 1107(a) would subject the debtor in possession to the strict limitations contained in § 327(a). Thus, the debtor, as debtor in possession, would be barred from retaining as 'professional persons' the services of its directors, officers, employees or investment banker".) 5 Collier on Bankruptcy, para. 1107.03 at p. 1107–09 and 10 (15th ed. 1988). ("[T]he purpose for the § 1107(b) exception in debtor in possession cases is to allow the debtor in possession to utilize its 'management team' which may include professionals who are familiar with the operation of the business and in whom the debtor in possession has confidence.") *See, In re Viking Ranches, Inc.*, 89 B.R. 113, 115 (Bankr.C.D. Cal.1988), citing, *In re Best Western Heritage Inn Partnership*, 79 B.R. 736 (Bankr. E.D.Tenn.1987). *In re Heatron, Inc.*, 5 B.R. 703 (Bankr.W.D.Mo.1980).

## 2. Fairness Opinion and Security Ownership

■ The Debtors disclosed in the Shearson application that Shearson gave financial advice to the Debtors in connection with the fairness of the price offered shareholders in the leveraged acquisition. As there is no litigation currently pending concerning the subject leveraged acquisition, it would be premature to deal with the matter at this time. *See, In re Martin*, 817 F.2d 175, 183 (1st Cir.1987); *In re O'Connor*, 52 B.R. 892, 898 (Bankr.W.D.Okla.1985); *In re O.P.M. Leasing Services, Inc.*, 16 B.R. 932, 939 (Bankr.S.D.N.Y.1982).

The Debtors have also disclosed that Shearson owns debt securities in the principal amount of $104,000.00 and 20,343 shares of equity securities of Debtors. However, because of its internal policies, Shearson is now precluded from buying or selling Debtors' securities for its own account. The securities of the Debtors held by Shearson are minute when compared to Shearson's 16.3 billion dollar portfolio of securities and the outstanding debt and

---

**1.** The court in *In re Glosser Brother, Inc.*, 102 B.R. 38, 42 (Bankr.W.D.Pa.1989) denied the application of the debtors in possession to employ Bear Stearns & Co., Inc., as investment advisors, in large part because "[f]rankly, we are not persuaded that an investment banker is necessary in this case." That case did not deal with a "classical 'reorganization'". *Id.* at 42, in the instant case, however, the Debtors are viable and with the appropriate professional expertise, can leave the protection of this Court a financially healthy enterprise.

equity securities of the Debtors. Accordingly, Shearson is a disinterested person in spite of having provided the fairness opinion and its ownership of debt and equity securities of the Debtors. *See, In re O'Connor,* 52 B.R. 892, 898 (Bankr.W.D. Okla.1985), *In re Viking Ranches,* 89 B.R. 113, 115 (Bankr.C.D.Cal.1988).

### 3. Director

■ Debtors have also disclosed that Phillip Caldwell, one of Shearson's Senior Managing Directors and a member of the Board of Directors of both Shearson and its parent, was a member of Federated's Board of Directors through May, 1988. Consistent with the above analysis relating to Shearson's underwriting of Debtors' securities, Caldwell's connections do not create a meaningful incentive on the part of Caldwell or Shearson to act contrary to the best interests of the estate. Accordingly, Shearson and Caldwell are disinterested person[s] under 11 U.S.C. § 327(a). Assuming arguendo, that they would not be considered disinterested person[s], 11 U.S.C. § 1107(b) would still authorize their representation of the Debtors.

### II. *Nunc Pro Tunc*

■ Bankruptcy courts have the power to authorize retroactive employment of professionals under their broad equity power. *In re Arkansas Co., Inc.,* 798 F.2d 645 (3rd Cir.1986); *In re Triangle Chemicals, Inc.,* 697 F.2d 1280 (5th Cir.1983).

As the court stated in *In re Coast Trading, Inc.,* 62 B.R. 664 (Bankr.D.Or.1986):

[A] professional seeking an untimely order authorizing employment should meet the requirements of Section 327(a), and Bankruptcy Rule 2014(a) (except for requirement of preemployment approval), the same as any other applicant would. In addition, the professional must satisfactorily explain to the Court his failure to obtain prior court approval.

■ The Court must assess each case on its own facts and circumstances. *In re Microwave Products of America, Inc.,* 104 B.R. 900, 905 (Bankr.W.D.Tenn.1989). In the instant case, Shearson began rendering services to Debtors on February 5, 1990. During February and March, 1990, Debtors discussed the terms and conditions of Shearson's retention with the Official Committees and Debtors' lenders. Debtors informed the Court of the proposed retention of Shearson at the first hearing following commencement of Shearson's work for Debtors on February 22, 1990. The Shearson application was filed on March 7, 1990, and heard pursuant to this Court's Case Management Order on April 12, 1990. As in the *Microwave Products* case, "there is no ascertainable or foreseeable damage to the estate by allowing the order to be entered, and there are benefits to the estate from the services rendered." *Id.* at 905. Accordingly, the Court will allow the retroactive retention of Shearson as of February 5, 1990.

■ The limited objections of the Official Committee of the Federated Unsecured Creditors Committee and the Official Committee of Federated Bondholders are granted in part and overruled in part. Insofar as it is feasible, and to avoid duplication of services, until there is a showing of a conflict the Court strongly urges the Debtors to share the Shearson work product with the Official Committees. Likewise, the Committees who have applications under consideration are also urged to share the work product of their professionals.

■ To the extent that the term of the Shearson application is open-ended, the Court will limit the length of the employment to ninety (90) days after the filing of the first plan of reorganization. Provided, however, that Debtors may request the court to extend Shearson's retention for cause.

Finally, the proposed compensation and record keeping plan for Shearson (as well as the other investment bankers whose retention is under consideration) is reasonable and need not follow the plan applicable to attorneys and other professionals. Amendments to the plan and commitments to avoid duplication of effort were made on the record at the hearing. We expect the parties to abide by those commitments and

provide descriptions in such detail as to enable the Court, the U.S. Trustee and the parties in interest to evaluate the reasonableness and necessity of the time expended.

For the reasons stated herein, the application of the Debtors to employ Shearson Lehman Hutton, Inc. is granted.

IT IS SO ORDERED.