**In re SHARON STEEL CORPORATION, et al., Debtors.**

**Bankruptcy Nos. 92–10958, 92–10959 and 92–10961. Motion No. PW–1.**

United States Bankruptcy Court, W.D. Pennsylvania.

March 17, 1993.

**448**

Herbert P. Minkel, New York City, Paul M. Singer, Pittsburgh, PA, for debtor.

Philip E. Beard, Pittsburgh, PA, Henry Weisburg, New York City, for Official Committee of Unsecured Creditors.

William H. Schorling, Pittsburgh, PA, for Citibank.

Joseph M. Fornari, Jr., Pittsburgh, PA, for U.S. trustee.

## OPINION [1]

WARREN W. BENTZ, Bankruptcy Judge.

### Introduction

Sharon Steel Corporation, Sharon Specialty Steel, Inc. and Monessen, Inc. (collectively, "Debtor") each filed a voluntary Petition under Chapter 11 of the Bankruptcy Code on November 30, 1992. The cases are being jointly administered.

On December 7, 1992, the Debtor filed its Application for Authorization to Employ Price Waterhouse as Accountant and Financial Advisor ("Application"). By Order dated December 29, 1992, we authorized the employment of Price Waterhouse *nunc pro tunc* to the filing date of November 30, 1992 and continuing until January 7, 1993. A hearing was held on January 7, 1993 to consider the continued employment of Price Waterhouse.

The United States Trustee objects to the Application on the basis that Price Waterhouse holds a prepetition unsecured claim in the amount of $875,894.15. The United States Trustee asserts that Price Waterhouse is ineligible for employment by the Debtor as it cannot satisfy the requirement of 11 U.S.C. § 327(a) that it be disinterested. No other party opposes the Application.

On January 7, 1993, a hearing was held at which we took evidence and heard arguments of counsel. Based on the evidence presented at the hearing, the pleadings and arguments of counsel, we authorized the Debtor's continued retention of Price Waterhouse.

### Facts

The Debtor is a fully integrated steel company with annual prepetition sales of $485,000,000. Price Waterhouse has served as the Debtor's independent auditor since 1991. In connection with their work prior to the bankruptcy filing, Price Waterhouse became intimately familiar with the Debtor's accounting systems, cost structure, inventories, management information systems, and employee benefit plans. In connection with the performance of prepetition services, the Debtor is obligated to Price Waterhouse in the amount of $875,894.15. Total unsecured claims against this Debtor will far exceed $100 million.

The Debtor shut down its operations prepetition. After filing, the Debtor filed a Motion to Use Cash Collateral which continues to be opposed by the secured lenders who hold claims in excess of $70,000,000. A two-day hearing was held on the cash collateral matter at the beginning of December, at the conclusion of which the Court determined that the business plan submitted by the Debtor did not justify the resumption of operations and the allowance of the use of the secured lenders' cash collateral. The Court granted the Debtor an opportunity to present a revised business plan. A further hearing is presently scheduled for April 6 and 7, 1993. In the interim, this case is on hold and the plant is shut down. Present use of cash collateral is limited to that necessary to maintain the premises with a skeletal staff.

Price Waterhouse has stated by affidavit that it will not participate as an unsecured creditor in the Debtor's Chapter 11 case nor will it vote its claim in connection with the confirmation of any plan of reorganization.

The Official Committee of Unsecured Creditors ("Committee") supports the retention of Price Waterhouse. Both the Committee and the secured lenders acknowledge the difficulty and the prohibitive cost of replacing Price Waterhouse. The Debtor's chief financial officer estimated that it would cost in excess of a half a

---

1. This Opinion constitutes this Court's findings of fact and conclusions of law.

million dollars for a replacement accounting firm to learn the Debtor's systems and costs.

The United States Trustee's objection is not premised on the ability of Price Waterhouse to perform adequately in this case or on the need for Price Waterhouse to remain in this case. It is based on the United States Trustee's interpretation of the Bankruptcy Code which the United States Trustee asserts prohibits the appointment of Price Waterhouse because it holds a prepetition claim and is therefore not a disinterested party. The United States Trustee asserts that the Bankruptcy Code must be interpreted literally as it is written whether or not the result is negative or against the best interests of the estate.

### Discussion

Under § 1107(a), a debtor in possession may generally select its own professionals without interference. 11 U.S.C. § 1107(a). A debtor's selection, however, is subject to the limitations of § 327(a)—the professionals must be "disinterested persons" and not have any "interest adverse to the estate." 11 U.S.C. § 327(a). Section 101(14)(A) defines "disinterested person" as one that "is not a creditor ..." 11 U.S.C. § 101(14)(A).

It is uncontested that Price Waterhouse is one of the twenty largest creditors of the estate. Therefore, if read and interpreted literally as suggested by the United States Trustee, Price Waterhouse would be barred as creditors are per se "interested." The United States Trustee's position finds support in numerous cases. *See e.g., In re Middleton Arms, L.P.,* 934 F.2d 723 (6th Cir.1991); *In re Pierce,* 809 F.2d 1356, 1362 (8th Cir.1987); *In re Siliconix, Inc.,* 135 B.R. 378 (N.D.Cal.1991); *In re Hub Business Forms, Inc.,* 146 B.R. 315 (Bankr. D.Mass.1992).

■ While some courts do interpret § 327(a) literally, we believe that a more practical view is required which considers the economic realities of the case and the overriding purposes of Chapter 11 of the

Bankruptcy Code. As the Supreme Court stated in *NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 528, 104 S.Ct. 1188, 1197, 79 L.Ed.2d 482 (1984), "[t]he fundamental purpose of reorganization is to prevent a debtor from going into liquidation, with the attendant loss of jobs and possible misuse of economic resources." *Id., citing* H.R.Rep. No. 95–595, p. 220 (1977).

The Court in *In re Federated Dept. Stores, Inc.,* 114 B.R. 501 (Bankr.S.D.Ohio 1990) set forth the following analysis with which we agree: [2]

> This Court cannot operate in a vacuum when determining whether Shearson is a disinterested person. Courts must apply common sense when interpreting statutes. *In re PHM Credit Corp.,* 110 B.R. 284, 288 (E.D.Mi.1990). ("Statutes should be interpreted to avoid unreasonable results whenever possible.") *Id.* at 288, citing, *American Tobacco Co. v. Patterson,* 456 U.S. 63, 71, 102 S.Ct. 1534, 1538, 71 L.Ed.2d 748 (1982). The court in *PHM Credit* construed disinterested person using the following equitable analysis:
>
> > Essential to any analysis of the meaning of and policy behind any section of the bankruptcy code is the recognition that a bankruptcy court is a court of equity. Bankruptcy courts do not read statutory words with a computer's ease, but operate under the overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction.
>
> *Id.* at 288–89, quoting, *In re Briggs Transportation Co.,* 780 F.2d 1339, 1343 (8th Cir.1985); *See also, In re Martin,* 817 F.2d 175, 181 (1st Cir.1987). The purpose behind the disinterested person requirement is to identify persons who exhibit a risk of acting in a manner calculated to maximize their own interests at the expense of the best interests of the estate. *See, In re O'Connor,* 52 B.R. 892, 899 (Bankr.W.D.Okla.1985).
>
> While some courts do interpret § 327(a) literally, the better analysis is to balance the risk and gravity of the potential con-

---

**2.** We note that this Court is within the Sixth Circuit and that a subsequent Sixth Circuit Decision appears to conflict with this analysis. *See*

*In re Middleton Arms, L.P.,* 934 F.2d 723 (6th Cir.1991).

flict of interest with the costs that the estate and perhaps the public would incur in the event of disqualification of the professional. Some of these costs include the additional expense and delay in getting a substitute professional up to speed and the loss of the original professional's superior expertise that the substitute professional cannot replace. *In re Martin,* 817 F.2d 175, 182 (1st Cir. 1987). ("This inquiry is of necessity case-specific ... Armed with knowledge of all of the relevant facts, the bankruptcy court must determine, case by case, whether the [alleged conflict] can be tolerated under the particular circumstances. In so doing, the court should consider the full panoply of events and elements ..."). *Id.* at 182; *In re Heatron, Inc.,* 5 B.R. 703, 704–05 (Bankr. W.D.Mo.1980); *In re Best Western Heritage Inn Partnership,* 79 B.R. 736 (Bankr.E.D.Tenn.1987); *In re Guy Apple Masonry Contractor, Inc.,* 45 B.R. 160, 167 (Bankr.D.Ariz.1984); *In re O.P.M. Leasing Services, Inc.,* 16 B.R. 932, 938 (Bankr.S.D.N.Y.1982).

114 B.R. at 504, 505. *See also In re PHM Credit Corp.,* 110 B.R. 284, 288–89 (E.D.Mich.1990).

■ Prior to filing its bankruptcy Petition, the Debtor had ceased operations. The ability to restart operations and have any hope of reorganization hinges upon the Debtor's ability to demonstrate the appropriateness of allowing the Debtor to use the secured lenders' cash collateral. Absent an order permitting the use of cash collateral, this Debtor is doomed to failure.

Price Waterhouse is most familiar with the Debtor's accounting systems and operations. It assisted the Debtor in preparation for the preliminary hearing on the use of cash collateral in early December. Following that hearing, the Debtor's motion to use cash collateral was interimly denied, but the Debtor was given the opportunity to revise its business plan and to present further evidence of its ability to operate profitably at a final cash collateral hearing which is presently scheduled for April 6–7, 1993. The Debtor requires the expertise of Price Waterhouse to develop and present its revised business plan.

Even if the Debtor had the capability of engaging an accounting firm to replace Price Waterhouse, it would be extraordinarily expensive and take a substantial length of time to become familiar with the Debtor's needs.

The Debtor has no cash to pay a retainer to a new firm and it is unlikely that a new firm could be engaged without a retainer given the serious possibility that this estate will have no funds with which to pay administrative expenses. Further, the Debtor is under tight time constraints to complete its work and present it to the Court.

The economic realities of this case make Price Waterhouse's appointment imperative. No harm to any other party has been alleged or can be shown. Price Waterhouse has agreed not to participate in the Debtor's Chapter 11 case nor vote its unsecured claim. Clearly, the failure to appoint Price Waterhouse would jeopardize any hope the Debtor has of presenting a business plan demonstrating that the Debtor has any chance at reorganization.

For the above reasons, the appointment of Price Waterhouse as accountant and financial advisor has been approved by separate order.