44 F.3d 1310
 63 USLW 2475, 32 Collier Bankr.Cas.2d 1391,
26 Bankr.Ct.Dec. 749, Bankr. L. Rep. P 76,336
 In re FEDERATED DEPARTMENT STORES, INC.; Allied Stores
Corporation, Debtors.
M. Scott MICHEL, United States Trustee, Plaintiff-Appellant,
v.
FEDERATED DEPARTMENT STORES, INC.; Shearson Lehman, Inc.,
Defendant-Appellees.
 Nos. 93-3745, 93-4186.
 United States Court of Appeals,
Sixth Circuit.
 Argued Oct. 14, 1994.
Decided Jan. 17, 1995.
 
 Neal J. Weill, Cincinnati, OH, Jennifer H. Zacks (argued), William Kanter (briefed), Civil Div., Appellate Staff, Martha L. Davis, Civil Div., Bruce G. Forrest (briefed), Civil Div. Appellate Staff, U.S. Dept. of Justice, Washington, DC, Lawrence J. Hackett, Columbus, OH, Jeanne M. Crouse, U.S. Dept. of Justice, Executive Office for U.S. Trustees, Washington, DC, for M. Scott Michel in No. 93-3745.
 David G. Heiman, Cory Lipoff, Jones, Day, Reavis & Pogue, Cleveland, OH, for Federated Dept. Stores, Inc. in No. 93-3745.
 Mark Thompson (argued and briefed), I. Scott Gottdiener, Michael P. Graney, Simpson, Thacher & Bartlett, New York City, for Shearson Lehman Bros., Inc. in No. 93-3745.
 Jennifer H. Zacks (argued and briefed), U.S. Dept. of Justice, Appellate Staff, Civil Div., Washington, DC, for M. Scott Michel in No. 93-4186.
 Mark Thompson (argued and briefed), Simpson, Thacher & Bartlett, New York City, for Shearson Lehman Bros., Inc. in No. 93-4186.
 Before: KEITH, WELLFORD, and DAUGHTREY, Circuit Judges.
 WELLFORD, Circuit Judge.
 
 
 1
 These consolidated appeals involve Lehman Brothers'[1] request for compensation for services rendered to the debtor, Federated Department Stores, Inc., ("Federated") during its Chapter 11 reorganization. The bankruptcy court approved Lehman Brothers' appointment as a financial advisor to Federated over the strong objections of the United States Trustee ("Trustee").[2] The Trustee argued that Lehman Brothers was disqualified from serving in that capacity because it was not a "disinterested person" as required under the United States Bankruptcy Code ("Code"). While Lehman Brothers' appointment was on appeal from the bankruptcy court to the district court, Lehman Brothers continued to serve as Federated's financial advisor. After Federated's plan of reorganization was confirmed and Lehman Brothers was no longer employed, Lehman Brothers filed its final application for fees and expenses which was approved by the bankruptcy court. The Trustee appealed the bankruptcy court's award of fees on the grounds that Lehman Brothers never should have been retained in the first instance and, therefore, was not entitled to compensation. After Federated completed its reorganization, the district court, having not yet ruled on the propriety of Lehman Brothers' retention, held that the Trustee's appeal of the retention order was moot. Further, the district court concluded that the bankruptcy court did not abuse its discretion in awarding fees to Lehman Brothers despite the fact that Lehman Brothers was an "interested person" within the meaning of the Code.
 
 
 2
 The Trustee has appealed both district court orders, and the appeals have been consolidated. Appeal No. 93-3745 is the Trustee's objection to the district court's determination that the retention order appeal was moot, and appeal No. 93-4186 is the Trustee's objection to the district court's affirmance of the bankruptcy court's order granting Lehman Brothers compensation for services rendered during the pendency of Federated's Chapter 11 reorganization. For the reasons stated below, we DENY the defendants' motion to dismiss as moot Appeal No. 93-3745, and we REVERSE the bankruptcy court's decision approving the appointment of Lehman Brothers as Federated's financial advisor. As for Appeal No. 93-4186, we REVERSE, in part, the bankruptcy court's order granting Lehman Brothers compensation and REMAND to the district court with instructions to disallow compensation for all services rendered after this court's decision in In re Middleton Arms, Ltd. Partnership, 934 F.2d 723 (6th Cir.1991).
 
 I. PROCEDURAL HISTORY
 
 3
 On January 15, 1990, Federated, Allied Stores Companies and numerous other debtors filed sixty-six separate reorganization cases in the United States Bankruptcy Court for the Southern District of Ohio. The reorganization of Federated was the one of the largest in United States history, and due to the highly complex nature of the bankruptcy, Federated sought to hire a financial advisor to aid it in developing an effective reorganization plan. On February 6, 1990, Federated and Lehman Brothers entered into a Retention Agreement. Pursuant to the agreement, Lehman Brothers agreed to provide "financial advisory services" to Federated during the pendency of the Chapter 11 case in exchange for a fee of $250,000.00 per month subject to the bankruptcy court's approval. Lehman Brothers' services included evaluating Federated's debt and equity structures, formulating and negotiating the structures of any new securities' offerings, and developing the actual plan of reorganization.
 
 
 4
 On March 16, 1990, Federated asked the bankruptcy court for approval of its Retention Agreement with Lehman Brothers. The Trustee objected on the grounds that Lehman Brothers was disqualified from serving as the debtor's financial advisor because it was not a "disinterested person" as required by 11 U.S.C. Sec. 327(a). Section 327(a) allows a trustee, or debtor-in-possession like Federated, to employ financial advisors such as Lehman Brothers if the advisor "do[es] not hold or represent an interest adverse to the estate," and is a "disinterested person" within the meaning of 11 U.S.C. Sec. 101(14). See 11 U.S.C. Sec. 327(a). Section 101(14) defines a "disinterested person" as someone who:
 
 
 5
 (A) is not a creditor, an equity security holder, or an insider;
 
 
 6
 (B) is not and was not an investment banker for any outstanding security of the debtor;
 
 
 7
 (C) has not been, within three years before the date of the filing of the petition, an investment banker for a security of the debtor, or an attorney for such an investment banker in connection with the offer, sale, or insurance of a security of the debtor;
 
 
 8
 (D) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor or of an investment banker specified in subparagraph (B) and (C) of this paragraph, or for any other reason; and
 
 
 9
 (E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) and (C) of this paragraph, or for any other reason.
 
 
 10
 Id. Sec. 101(14). The Trustee argued that Lehman Brothers appointment as Federated's financial advisor violated both the adverse interest and disinterested person requirements of Sec. 327(a).
 
 
 11
 As evidence of Lehman Brothers' interest, the Trustee pointed to Lehman Brothers' numerous holdings of Federated securities as well as debt and equity instruments held by some of Lehman Brothers' clients, over which Lehman Brothers possessed discretionary trading authority. As required by Bankruptcy Rule 2014(a), Lehman Brothers disclosed to the bankruptcy court all prior and current financial contacts with Federated. In addition to holding a substantial amount of Federated's debt and preferred equity, Lehman Brothers also served as Federated's lead underwriter in a public offering of over $200,000,000.00 of debt. Moreover, Lehman Brothers served as Federated's investment banker during the ill-fated Campeau Corporation's leveraged acquisition (LBO) of Federated. In all, Lehman Brothers listed twenty-one separate areas of financial connections with Federated dating back to the mid-1980s.
 
 
 12
 Before the bankruptcy court, Federated conceded that Lehman Brothers' past service as its investment banker was a technical obstacle to Lehman Brothers' appointment under Sec. 101(14) and Sec. 327(a). Federated noted, however, that "a denial of the Application would unjustly disadvantage the Debtors by denying it the assistance of the most uniquely qualified financial advisor, and by unduly burdening the estate ... with additional and unnecessary expense and causing significant delay in the reorganization process." Federated also argued that because the number of investment banking firms which had previously represented it was extensive, "the Debtors may effectively be precluded from engaging a major investment banking firm to assist in their reorganization." Despite the Trustee's reliance on the literal and seemingly unambiguous language of the Code, the bankruptcy court held that equitable principles and the need for a quick and effective reorganization warranted a departure from the strict language of the statute. See 114 B.R. 501, 504-05 (Bankr.S.D. Ohio 1990). The bankruptcy court explained that
 
 
 13
 [w]hile some courts do interpret Sec. 327(a) literally, the better analysis is to balance the risk and gravity of the potential conflict of interest with the costs that the estate and perhaps the public would incur in the event of disqualification of the professional [Lehman Brothers]. Some of these costs include the additional expense and delay in getting a substitute professional up to speed and the loss of the original professional's superior expertise that the substitute professional cannot replace.
 
 
 14
 Id. at 504. Accordingly, the bankruptcy court approved Federated's application.
 
 
 15
 On May 31, 1990, the Trustee appealed the bankruptcy court's decision to the United States District Court for the Southern District of Ohio. The district court, however, did not resolve the appeal immediately. In fact, for reasons that are not entirely clear, the district court did not rule on the Trustee's appeal for almost three years until after the reorganization was completed.
 
 
 16
 One reason for the delay was that during the period the district court was considering the Trustee's appeal, another district court had decided a similar issue in the case of In re Middleton Arms, Ltd. Partnership, 119 B.R. 131 (M.D.Tenn.1990). In Middleton Arms, the district court reversed a bankruptcy court's approval of an appointment under Sec. 327(a) because the real estate broker hired by the debtor-in-possession was not a disinterested party and the bankruptcy court's equitable powers could not be used to evade the plain and disqualifying language of the very same statute. After Middleton Arms was appealed to this court, the district court, in the case at bar, sua sponte stayed the Trustee's appeal pending our decision. We subsequently affirmed the district court's decision in Middleton Arms on June 6, 1991, approximately one year after the appeal in the instant case to the district court in Ohio. See 934 F.2d 723 (6th Cir.1991).
 
 
 17
 In the interim, while Federated was pursuing its reorganization efforts, Lehman Brothers continued to provide services in reliance on the retention order. Lehman Brothers applied for, and received, interim compensation and reimbursement for its expenses on seven different occasions. The Trustee never objected to Lehman Brothers' receipt of compensation on the grounds of mismanagement, over-billing or inadequate performance. The Trustee's standing and sole objection was that Lehman Brothers was not statutorily qualified to serve as Federated's financial advisor and, therefore, Lehman Brothers was not eligible to receive compensation from the estate.
 
 
 18
 On January 10, 1992, the bankruptcy court confirmed Federated's final reorganization plan and pursuant to the Retention Agreement, Lehman Brothers' employment was terminated on January 31, 1992. On April 6, 1992, Lehman Brothers sought final compensation and reimbursement for the services rendered to Federated under the Retention Agreement. Again, the Trustee objected to the award of fees. The bankruptcy court overruled the Trustee's objections and awarded Lehman Brothers the compensation requested. The Trustee filed a timely appeal to the district court. On May 22, 1992, following the conclusion of the reorganization, Federated filed a motion to dismiss as moot the Trustee's appeal of the retention order, arguing that since the reorganization was already complete the district court could not provide the Trustee the relief requested. With two unresolved appeals pending before the district court, the Trustee argued against dismissal of the retention order appeal on the grounds that the parties dispute over Lehman Brothers' right to fees and expenses depended on the validity of the bankruptcy court's retention order. Nevertheless, on April 12, 1993, the district court dismissed the Trustee's retention order appeal as moot.
 
 
 19
 Then, on August 25, 1993, the district court affirmed the bankruptcy court's order granting Lehman Brothers' compensation and expenses under 11 U.S.C. Sec. 330(a). In doing so, the court briefly addressed the question of mootness with regard to the bankruptcy court's retention order, noting that "[t]he appropriate relief for employment of an interested financial advisor would be to terminate the employment. Because Debtors ha[ve] emerged from bankruptcy and Shearson's term of employment ha[s] ended, there [i]s no employment for the [c]ourt to terminate ... Thus, the retention issue [i]s moot."
 
 
 20
 The Trustee argued before the district court that resolution of the retention issue was a prerequisite to deciding Lehman Brothers' claim to fees under the Code. The district court rejected the Trustee's reading of the Code and concluded that "[i]n order to decide the Fee Appeal, the [c]ourt need not determine whether Shearson was disinterested with regard to retention. Thus, the [c]ourt will decide only the issue before it, whether the bankruptcy court abused its discretion by approving the final fee application." The district court noted that the decision to award fees to Lehman Brothers as a professional hired by the estate is a matter left to the bankruptcy court's discretion. As support, the district court relied on the following portion of 11 U.S.C. Sec. 328(c):
 
 
 21
 [T]he [bankruptcy] court may deny allowance of compensation for services and reimbursement for expenses of a professional person employed under [Sec.] 327 and [Sec.] 1103 of this title if, at any time during such a person's employment under [Sec.] 327 or [Sec.] 1103 of this title, such professional person is not a disinterested person.
 
 
 22
 Noting our court's decision in Middleton Arms, the district court concluded that Lehman Brothers was probably an "interested person" who should have been prohibited from serving as Federated's financial advisor. The district court concluded, however, that the matter before the court was not the retention order but, rather the bankruptcy court's decision to compensate Lehman Brothers. Since Sec. 328(c) did not require the bankruptcy court to disallow compensation to a professional who was an interested party, the district court concluded that the bankruptcy court's decision to compensate must be reviewed for abuse of discretion. Because Lehman Brothers provided Federated a valuable service during the reorganization, and did so in reliance on the bankruptcy court's presumptively valid order, the district court held that the bankruptcy court did not abuse its discretion in ordering full payment to Lehman Brothers.
 
 II. THE STANDARD OF REVIEW
 
 23
 This court's review of the bankruptcy court's retention and compensation orders is limited to abuse of discretion. See Calhoun v. Stratton, 61 F.2d 302, 303 (6th Cir.1932) (holding that appellate review of a compensation order for attorney's fees is limited to abuse of discretion); see also In re Nucorp Energy, Inc., 764 F.2d 655, 657 (9th Cir.1985) (same). "While we follow the bankruptcy court's findings of fact unless clearly erroneous [when reviewing for abuse of discretion], we exercise plenary review with regard to questions of law." See In re Laguna Assocs. Ltd. Partnership, 30 F.3d 734, 737 (6th Cir.1994). The retention and compensation orders involved interpretations of law and "[t]his court applies a plenary review of the bankruptcy court's conclusion of law, using a de novo standard." In re Eagle-Picher Industries, Inc., 999 F.2d 969, 972 (6th Cir.1993); In re Zick, 931 F.2d 1124, 1126 (6th Cir.1991).
 
 
 24
 III. FEDERATED'S MOTION TO DISMISS APPEAL NO. 93-3745 FOR
 
 MOOTNESS
 
 25
 The Trustee asked the district court to reverse the bankruptcy court's decision, allowing Lehman Brothers to serve as a professional advisor under Sec. 327(a) of the Code, arguing that the appointment was illegal from the outset. The district court dismissed the Trustee's appeal of the retention order because Lehman Brothers had already finished its service to the bankruptcy estate and because Federated's reorganization was complete.
 
 
 26
 Federated makes two colorable arguments for mootness. First, Federated contends that the appeal is moot because the relief requested from the district court, and this court for that matter, is removal of Lehman Brothers as Federated's financial advisor; relief that is now impossible to grant due to Federated's emergence from bankruptcy. Second, Federated argues that the retention order appeal is moot because even if the Trustee was successful in convincing this court to invalidate the retention order, that result does not affect, as a matter of law, the district court's decision to affirm Lehman Brothers' compensation, which is a free-standing determination that is not dependent on the validity of the retention order. Both arguments, however, are meritless in our view.
 
 
 27
 The retention issue is not moot because of the "collateral consequences" of the retention order on Lehman Bothers' ability to seek compensation under Sec. 330 of the Code. The Trustee correctly argues that[d]ismissal of the underlying bankruptcy proceeding [or completion of obligations under the Retention Order] may indicate that no case or controversy remains with respect to issues directly involving the reorganization of the estate, but it does not necessarily indicate that no controversy exists with respect to any collateral or ancillary issues.
 
 
 28
 See In re Dahlquist, 751 F.2d 295, 298 (8th Cir.1985) (holding issue of attorney's compensation in Chapter 11 case was an ancillary matter that was not "rendered moot by the dismissal of the underlying bankruptcy proceeding"). Therefore, the fact that Lehman Brothers has completed its performance does not, ipso facto, dictate a finding of mootness.
 
 
 29
 The Fourth Circuit in In re Harold & Williams Development Co., 977 F.2d 906 (4th Cir.1992), refused to dismiss on the basis of mootness an appeal of a retention order under Sec. 327. In that case, the bankruptcy court refused to approve a debtor's request to appoint a dual representative for the estate (i.e., one person to serve both as the estate's accountant and attorney). Id. at 908. The bankruptcy court concluded that there was a per se rule barring such dual representation. Id. The district court held there was no per se rule disqualifying a dual representative but affirmed the bankruptcy court's order, under the circumstances, because the decision to approve a professional under Sec. 327(a) was a matter left to the discretion of the bankruptcy judge. Id. at 908-09.
 
 
 30
 Before reaching the merits of the appeal, the Fourth Circuit addressed the Trustee's argument that the appeal was moot because the debtor's reorganization plan had already been confirmed. Id. at 909 n. 1. Because the relief requested was an order approving the appointment of the accountant under Sec. 327(a), the Trustee argued that the appeal was obviated by the confirmation of the reorganization plan. Id. The debtor argued, as does the Trustee in the case at bar, that because he was seeking reimbursement for services rendered by the accountant prior to the bankruptcy court's order of disqualification, the controversy over the validity of the bankruptcy court's order survived the termination of the bankruptcy proceeding. The Fourth Circuit held that "[c]onsidering the potential effect of the bankruptcy court's ruling on the debtor's ability to" obtain reimbursement for the accountant's services the appeal was not moot. Id.[3]
 
 
 31
 The "collateral consequences" rationale was also recognized in In re Allegheny International, Inc., 117 B.R. 171 (W.D. Pa.1990). There, the debtor sought approval from the bankruptcy court for the appointment of a special advisor under Sec. 327(a). See id. at 174. The bankruptcy court approved the debtor's request over the objections of the Equity Committee which argued that the advisor was disqualified from serving because he was not a "disinterested person" within the meaning of the Code. Id. Prior to the district court hearing the appeal, the special advisor completed his duties under the retention agreement. See id. at 177. Like Federated here, the debtor in Allegheny International argued that because the advisor had completed his duties under the retention agreement the district court could not grant the Equity Committee the relief it requested, thereby mooting the appeal. See id. The district court, however, held the retention order was not moot because the court could still grant effective relief by reversing the bankruptcy court's approval and ordering return of all payments made to the advisor by the estate. Id. Thus, Harold & Williams and Allegheny International provide a persuasive rationale to deny a claim of mootness. Because the retention order has collateral consequences concerning Lehman Brothers' compensation, this court can grant effective relief.
 
 
 32
 Federated contends, however, that the retention order has no "collateral consequences" on the issue of compensation. Federated points to the fact that the retention order and compensation order "litigation has proceeded on a separate track, on a separate record and with separate legal issues." Federated notes that the district court purported to decide the compensation issue apart from its consideration of the mootness of the retention order. The district court held that the decision to award fees to Lehman Brothers was a matter within the discretion of the bankruptcy court, even if Lehman Brothers was not a "disinterested person."
 
 
 33
 We believe the district court erred in concluding that a bankruptcy court has discretion to compensate a professional under Sec. 330(a) if such professional's original appointment violated Sec. 327(a). The validity of the retention order should have been decided before granting compensation from the bankruptcy estate. Because the validity of the retention order has collateral consequences on the validity of the compensation order, the district court erred in concluding that it could not provide the Trustee effective relief. For these reasons, we DENY Federated's motion to dismiss Appeal No. 93-3745 because there is a case or controversy warranting exercise of this court's Article III jurisdiction.
 
 
 34
 Federated also argues that this court should dismiss the retention order appeal because the Trustee failed to seek, or obtain, a stay of the bankruptcy proceeding while the appeal was pending before the district court. Lehman Brothers alleges that it labored in reliance on the bankruptcy court's presumptively valid approval. According to Federated, this detrimental reliance and the Trustee's failure to obtain a stay has caused a "comprehensive change in circumstances" so that it would be inequitable now to reconsider the validity of the bankruptcy court's retention order.
 
 
 35
 Federated cites In re Roberts Farms, Inc., 652 F.2d 793, 798 (9th Cir.1981), in support of its argument. In our view, however, Roberts Farms is inapposite to this situation. In two subsequent cases, In re Dahlquist, 751 F.2d 295 (8th Cir.1985), and In re International Environmental Dynamics, Inc., 718 F.2d 322 (9th Cir.1983), the courts refused to dismiss appeals of two bankruptcy courts' interim awards of fees because the objecting parties failed to seek stays. International Environmental Dynamics declined to follow Roberts Farms where the recipient of interim fees knew from the outset that the interim award would be challenged by the objecting party. Id.
 
 
 36
 We find no basis for Lehman Brothers to claim that equity requires dismissal of this appeal. From the outset, Lehman Brothers knew the Trustee objected to its appointment and it elected to continue providing services to the estate knowing that the retention order would be reviewed de novo on appeal and would be subject to reversal. Thus, the Trustee's failure to seek or obtain a stay of the bankruptcy proceeding does not moot this appeal. See Ohio v. Madeline Marie Nursing Homes No. 1 & No. 2, 694 F.2d 449, 462-63 (6th Cir.1982) (refusing to apply Roberts Farms where appellant failed to seek a stay pending appeal).
 
 
 37
 IV. RETROACTIVE APPLICATION OF MIDDLETON ARMS AND
 
 EAGLE-PICHER
 
 38
 At oral argument, defendants conceded that if we reach the merits of the retention issue, we are required to apply retroactively In re Eagle-Picher Industries, Inc., 999 F.2d 969 (6th Cir.1993), and In re Middleton Arms, Ltd. Partnership, 934 F.2d 723 (6th Cir.1991). The parties correctly note that Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), is no longer the governing standard for retroactivity in civil cases. In Harper v. Virginia Department of Taxation, --- U.S. ----, ----, 113 S.Ct. 2510, 2517, 125 L.Ed.2d 74 (1993), the Supreme Court overruled Chevron and adopted a strict rule requiring retroactive application of new decisions to all cases still subject to direct review. Justice Thomas, writing for a four-Justice plurality, with Justice Scalia concurring, held that "[w]hen this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open to direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule." Id.
 
 
 39
 Harper, therefore, dictates retroactive application in the present case. This court decided Middleton Arms on June 6, 1991 and Eagle-Picher on May 6, 1993. Direct review of the bankruptcy court's retention and fee orders was still proceeding when these cases were decided. Consequently, Eagle-Picher and Middleton Arms must be given full retroactive effect.
 
 
 40
 V. THE VALIDITY OF LEHMAN BROTHERS' APPOINTMENT UNDER 11
 
 U.S.C. Sec. 327(a)
 
 41
 The bankruptcy court approved Lehman Brothers' appointment as Federated's financial advisor despite acknowledging that Lehman Brothers had numerous financial contacts with the debtor. The bankruptcy judge indicated that Lehman Brothers was not a "disinterested person" as required by 11 U.S.C. Sec. 327(a). The bankruptcy court also noted that Sec. 327(a) allowed a debtor-in-possession to employ, subject to the court's approval, only those "professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons." The basis for the appointment, despite Federated's interest, was that the bankruptcy court could not "operate in a vacuum when determining whether Shearson [wa]s a disinterested person" and that "[c]ourts must apply common sense when interpreting statutes." See 114 B.R. at 504. The bankruptcy court rejected a literal reading of Sec. 327(a) and applied a balancing test whereby the court weighed the risk of an actual conflict of interest against the harm to the estate caused by an order of disqualification. The court concluded that disqualification should not be ordered because there was no claim of an actual conflict of interest. Since Federated was in need of a financial advisor with Lehman Brothers' special expertise, the bankruptcy judge approved the appointment over the Trustee's objection.
 
 
 42
 The bankruptcy judge approved the retention agreement on an alternative basis as well. He noted that Sec. 327(a) is made applicable to a Chapter 11 case by 11 U.S.C. Sec. 1107(a) and that Sec. 1107(b) provided an exception to Sec. 327(a) which gives a debtor-in-possession "more latitude than a trustee in hiring professional persons." Id. at 505. Section 1107(b) provides that "[n]otwithstanding [Sec.] 327(a) of this title, a person is not disqualified for employment under [Sec.] 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." See 11 U.S.C. Sec. 1107(b). The bankruptcy court, therefore, construed Sec. 1107(b) as a necessary exception to the language of Sec. 327(a).
 
 
 43
 Almost two years before the district court dismissed the retention order appeal as moot and affirmed the compensation order, however, we decided In re Middleton Arms Ltd. Partnership, 934 F.2d 723 (6th Cir.1991). In that case, this court considered 1) whether a bankruptcy court's equitable powers provided an exception to Sec. 327(a)'s literal language prohibiting the employment of an interested person and, if not, 2) whether Sec. 1107(b)'s exception to Sec. 327(a) allowed a bankruptcy court to approve the appointment of a professional who the parties conceded was not a disinterested person under the Code. We concluded that the prohibition about disinterest was unambiguous, and held that "[Sec.] 327 prevents individual bankruptcy courts from having to make [equitable] determinations as to the best interest of the debtors in these situations." Id. at 725. We recognized certain inherent equitable powers of a bankruptcy judge, but we concluded that those powers "must be exercised within the confines of the Bankruptcy Code." Id. at 724 (quoting Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988)).
 
 
 44
 As for the claim of Sec. 1107(b)'s exception to Sec. 327(a), Middleton Arms explained that this exception was very narrow and only applied to those professionals who are disqualified solely because of their prior employment for the debtor-in-possession. Id. Where a professional is disqualified for other reasons expressly listed in the statutory definition of an "interested person," Sec. 1107(b) does not apply. Id.
 
 
 45
 In In re Eagle-Picher Industries, Inc., 999 F.2d 969 (6th Cir.1993), which we decided before the district court approved Lehman Brothers' compensation, this court decided a case virtually indistinguishable from the one at bar. Eagle-Picher involved a highly complex bankruptcy reorganization of eight separate consolidated debtors. Id. at 970 n. 1. As in the instant case, the debtors-in-possession and the investment firm of Goldman Sachs sought approval from the bankruptcy court of a retention agreement. Id. at 970. Over the objections of the United States Trustee, the bankruptcy court approved the agreement. Despite extensive evidence that Goldman Sachs had preexisting affiliations with the debtors that made it an interested person under Sec. 327(a), the bankruptcy court concluded that these affiliations provided Goldman Sachs with the background and expertise to provide just the kind of financial advice needed for a successful reorganization. Id. The district court affirmed the retention order and the Trustee appealed. Id. at 971.
 
 
 46
 The debtors in Eagle-Picher conceded, as do the defendants here, that the professional sought to be hired was not a disinterested person within the language of Sec. 327(a). Id. They argued, however, that absent a showing by the Trustee of an actual conflict of interest the bankruptcy court had the discretion to approve the appointment anyway. Id. Relying heavily on Middleton Arms, we stated once again that a showing of an actual conflict of interest was not required. Id. at 972. Eagle-Picher held that a person can be interested, "yet without an adverse interest;" we ruled that a professional can have neither an "adverse interest" nor be an "interested person." Id. Congress sought to disqualify professionals with the appearance of a conflict of interest as well as those who have an actual conflict of interest. We noted that
 
 
 47
 [t]he language of [Sec.] 327(a), when read in conjunction with the definitions set out in [Sec.] 101(14), does not leave room for debate: Goldman, Sachs is and was an investment banker for outstanding securities of the debtors, and as such, is not a disinterested person within the meaning of the statute. To read [Sec.] 1107(b) as providing an exception in this case would be to rob [Sec.] 101(14)(B) and (C) of any meaning in cases with debtors-in-possession.
 
 
 48
 Id. Accordingly, this court reversed the bankruptcy court's retention order. Id.
 
 
 49
 In summary, we conclude that the Trustee's objection to Lehman Brothers' appointment as Federated's financial advisor was a valid objection and should have been sustained, certainly after this court's decision in Middleton Arms. The lower courts' approval of the retention order based on "equitable considerations" and Lehman Brothers' "familiarity with the debtors' business operations" was "inappropriate." Eagle-Picher, 999 F.2d at 972 n. 5. The retention order was not a valid appointment, particularly in the face of the Trustee's continuing objections. The law stated herein is clear and consistent from and after June 6, 1991, when Middleton Arms was decided. Accordingly, we REVERSE the bankruptcy court's order approving the retention agreement.
 
 VI. AWARD OF FEES TO LEHMAN BROTHERS
 
 50
 Having decided that Middleton Arms and the Code specified that Lehman Brothers was not a valid and legitimate financial advisor, what then is the proper disposition of the fees already approved and paid to Lehman Brothers? Our authority to award fees is circumscribed by 11 U.S.C. Sec. 330(a), which provides that "the court may award [reasonable fees and expenses] ... to a professional person employed under [Sec.] 327." See 11 U.S.C. Sec. 330(a)(1)(2). We have already decided that Lehman Brothers' appointment was invalid and, therefore, Lehman Brothers was not a person employed under Sec. 327(a). The district court awarded compensation to Lehman Brothers on the novel theory that an invalidly appointed professional could nonetheless be compensated, after the fact, because of the discretion to deny compensation provided by 11 U.S.C. Sec. 328(c).
 
 
 51
 Section 328(c) allows a district court to completely deny compensation "if, at any time" during the appointment the professional is not disinterested within the meaning of Sec. 327(a). The district court reasoned that the statute's language--"at any time"--included the time of appointment and, thus, Sec. 328(c) bestowed upon the bankruptcy court the discretion to compensate a professional who was invalidly appointed in the first place. See United States Trustee v. Price Waterhouse, 19 F.3d 138, 142 (3d Cir.1994) ("[W]e interpret [Sec.] 328(c) to mean that if a non'disinterested' professional person is improperly employed, or if a professional person ceases to be 'disinterested' 'at any time during such employment,' the court may deny compensation."). Yet, we think the plain language of Sec. 328(c) limits the bankruptcy court's discretion to grant or deny compensation to "a professional person employed under Sec. 327." See 11 U.S.C. Sec. 328(c). Since Lehman Brothers was an interested person from the very outset, it was never "a professional person employed" under that section. As is evident, the district court's construction of Sec. 328(c) gives no effect to the limitation imposed by Sec. 327(a).
 
 
 52
 We believe that Sec. 328(c) is not controlling here. Rather, the decision to grant compensation is governed by Sec. 330(a) and that provision, like Sec. 328(c), clearly requires a valid professional appointment under Sec. 327(a) as a prerequisite to an award of compensation. See In re EWC, Inc., 138 B.R. 276, 282-83 (Bankr.W.D. Okla.1992) ("[T]o allow a court to, in essence approve employment as an officer of the court retrospectively by allowing payment for services rendered during a conflict pursuant to Sec. 328(c), when the same may not do so prospectively, pursuant to Sec. 327(a), is illogical, does not give effect to Sec. 327(a), and gives little respect to the Bankruptcy Code."). Accordingly, we hold that a valid appointment under Sec. 327(a) is a condition precedent to the decision to grant or deny compensation under Sec. 330(a) or Sec. 328(c).
 
 
 53
 Despite our holding today, we believe denying all compensation to Lehman Brothers would not be equitable. Neither Middleton Arms nor Eagle-Picher involved our directing a debtor's financial advisor to disgorge fees which had already been distributed to those entities. It is conceded that Lehman Brothers rendered valuable services to Federated during the reorganization. Until Middleton Arms was decided, there was no definitive appellate court decision which has come to our attention that determined the question of Lehman Brothers' qualifications to serve as Federated's financial advisor despite its interested status.[4]
 
 
 54
 Under these peculiar and unique circumstances, which are not likely to be repeated again in light of the now settled law in this circuit, we are of the view that fairness and equity dictate allowing Lehman Brothers to be compensated at its agreed rate up to June 6, 1991, but not beyond. Any fees and costs allowed and paid to Lehman Brothers in this case after June 6, 1991, will be promptly refunded to the bankrupt debtor. After that date on which Middleton Arms was decided, Lehman Brothers is charged with the knowledge that it was proceeding at risk and beyond the equitable authority of the bankruptcy court to effect further compensation.
 
 
 55
 Accordingly, we REVERSE and REMAND the compensation award for further determination by the bankruptcy court as to the proper amount of fees and costs allowable to Lehman Brothers through June 6, 1991. Any balance of fees and costs paid to Lehman Brothers after that date shall be ordered to be disgorged and repaid promptly to Federated. We REMAND, therefore, for further proceedings in conformity with this opinion.
 
 
 
 [1]
 Prior to 1993, Lehman Brothers was incorporated under the name of Shearson Lehman Hutton, Inc., and before 1990 operated under the name of Shearson Lehman Brothers, Inc
 
 
 [2]
 The Appellant in this case is the United States Trustee and not the individual bankruptcy case trustee. The function of the United States Trustee is to perform various regulatory and administrative tasks in the United States Bankruptcy Courts including "monitoring applications [of professionals] under [Sec.] 327 of Title 11." See 28 U.S.C. Sec. 586(a)(3)(H)
 
 
 [3]
 Harold & Williams cited with approval this court's decision in In re Middleton Arms, 934 F.2d 723, 725-26 (6th Cir.1991). See 977 F.2d at 909. We will discuss the effect of Middleton Arms hereafter at greater length
 
 
 [4]
 Indeed, the bankruptcy judge in Eagle-Picher had determined, despite the Trustee's objection, that Goldman-Sachs was a "disinterested person."